UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUREFIL, LLC,
        Plaintiff,

No. 1:09-cv-379

-v-

HONORABLE PAUL L. MALONEY

BONNE BELL, LLC,
        Defendant.

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Surefil (Plaintiff) is a Michigan limited liability company. Defendant Bonne Bell (Defendant) is a Nevada limited liability company, whose principal place of business is Ohio. On March 24, 2009, Plaintiff filed suit against Defendant in the Circuit Court for Kent County, Michigan. The short complaint totals only eight paragraphs. Although no "counts" are identified in the complaint, Plaintiff claims Defendant breached a contract and owes Plaintiff approximately $129,866.08, plus interest in the amount of $42,076.97. Defendant received the complaint on April 2, 2009. Defendant timely filed a notice of removal with this court on April 24, 2009. At issue is Defendant's motion for summary judgment. (Dkt. No. 29.)

**JURISDICTION**

This court has jurisdiction over the complaint under the diversity statute, 28 U.S.C. § 1332(a)(1). The parties are citizens of different states and the amount in controversy exceeds $75,000. Defendant properly removed the action from state court to federal court under the removal statute, 28 U.S.C. § 1446(a). The removal was timely; Defendant removed the action within thirty days after service of the complaint. *See* 28 U.S.C. § 1446(b).

**BACKGROUND**

Defendant Bonne Bell, a cosmetics company, sells, among other things, Smackers ® Body Mist products. Plaintiff Surefil has provided services to Defendant by contracting to fill, bottle, and label Body Mist products. Defendant develops its products and then contracts with others to make the products to Defendant's specifications. In April 2006, Peter Gray, a vice president of sales for Surefil, and Bob Deitrick, a senior buyer for Bonne Bell, discussed via email having Plaintiff produce 6 ounce Body Mist items for Defendant. (Def. Ex. A to Declaration of Robert Smaldino, PgID 187.) Plaintiff was supposed to order bottles for the Body Mist products from Tricor Braun. (*Id.*; Smaldino Dec. ¶ 6, PgID 183.) Mr. Gray acknowledged that the use of Tricor Braun bottles was a requirement for Plaintiff when packaging Defendant's product.[1] (Peter Gray Dep. at 15, PgID 202.)

On November 15, 2006, Defendant sent one of their purchase order forms (PO 100604) to Plaintiff ordering 17,016 units of Body Mist at $2.65 per unit for a total price of $45,092.40. (Def. Ex. B to Smadino Dec., PgID 189.) The purchase order had a delivery date of December 18, 2006. (*Id.*) Surefil agreed to the terms in the purchase order. (Smaldino Dec. ¶ 8, PgID 183.) Mr. Gray agreed that Surefil accepted the price and delivery terms in the purchase order.[2] (Gray Dep. at 17,

---

[1]Mr. Gray left Surefil in March 2008. The following exchange occurred between Defense Counsel and Mr. Gray:
> Q. Is it your understanding from this e-mail that you are confirming Tricor Braun as the approved vendor for bottle and sprayers for the Bonne Bell Mist product?
> A. Yes.
> Q. Just to be clear, this is a requirement for Surefil filling the product?
> A. Yes.

(Gray Dep. at 15, PgID 202.)

[2]Mr. Gray clarified that when Surefil acknowledges a purchase order, it sends its own terms and conditions. (Gray Dep. at 17.)

PgID 202.)

On November 29, 2006, Bob Deitrick emailed Bill Hunt at Surefil, copying Peter Gray and Bob Smaldino, asking for a quote for additional quantities of Body Mist to Purchase Order 100604.[3] (Pl. Ex. 3 to Bob Deitrick Dep., PgID 238.) On November 30, 2006, Surefil sent a document entitled "Quotation" for 31,968 six ounce units at $2.65 per unit. (Pl. Ex. 4 to Deitrick Dep., PgID 239.) The document is signed by Mr. Deitrick, although no date is indicated next to the signature. (*Id.*) At his deposition, Mr. Deitrick verified that the signature on the bottom of the document was his signature. (Deitrick Dep. at 27, PgID 249.) Typewritten in a box on the right side of the document is the following: "This order will be for 13,632 strawberry (US), 11,328 watermelon (US), 3,504 strawberry (CN) and 3,504 strawberry (CN)." (Pl. Ex. 4 to Deitrick Dep., PgID 239.) The document states that it is "valid until 12/31/2006." (*Id.*) Mr. Deitrick disagreed that the document constituted a purchase order. (Deitrick Dep. at 29, PgID 250.) He claimed the document was merely a quotation and, if the quotation was accepted, a purchase order would have been issued and signed on a Bonne Bell document. (*Id.*) On December 1, 2006, Plaintiff sent Defendant a document entitled "Surefil, LLC. Terms and Conditions of Acknowledgment," which was signed by Peter Gray. (Pl. Ex. 5 to Deitrick Dep., PgID 240.) Handwritten, next to the signature and date, is the following: "Note: PO 100604 plus quoted increase." (*Id.*) Peter Gray testified he signed the terms and conditions document. (Gray Dep. at 38, PgID 208.)

At some point between November 15 and November 29, 2006, Defendant became aware of a dispute between Plaintiff and Tricor Braun, the company who was supplying the 6 ounce bottles

---

[3]Specifically, Mr. Deitrick sought the price for an additional 7,632 units of 60113 (strawberry Body Mist US ) and an additional 7,320 units of 60115 (watermelon Body Mist US).

3

for Plaintiff to fill with Defendant's product. (Smaldino Dec. ¶ 9, PgID 183.) The dispute involved a problem with payment for an earlier order. (Gray Dep. at 18, PgID 203.) On November 29, 2006, Peter Gray emailed Bob Deitrick to explain the situation. (Def. Ex. C to Smaldino Dec., PgID 194.) Mr. Gray wrote that Plaintiff placed its order with Tricor Braun for the PO 100604 order, and was informed that Plaintiff would have to pay cash with the order due to "issues associated with the last bottle order." (*Id.*) Mr. Gray recommended to Defendant that Defendant, rather than Plaintiff, order the bottles, have them shipped to Plaintiff, and Plaintiff would deduct the cost of the bottles from the unit price. (*Id.*) Mr. Smaldino replied to Mr. Gray's email stating that Defendant would "step in and call Tricor Braun." (*Id.*, PgID 193.) In a follow up response, Mr. Gray explained that Plaintiff informed Tricor Braun that Tricor Braun would be paid when Defendant's invoice was paid. (*Id.*, PgID 192-93.) Mr. Gray identifies several options to assure that future bottle supplies would be timely received by Plaintiff. (*Id.*) Mr. Smaldino replied again to the email chain. He expressed disappointment that the issue continued to be a problem. (*Id.*, PgID 192.) He then stated that Tricor Braun needed to be paid by the end of the week or earlier and that Defendant would "take responsibility to make sure that Tricor doesn't demand a cash only process." (*Id.*) Mr. Smaldino stated he needed to know immediately if that was going to take place. (*Id.*)

Plaintiff did not deliver any 6 ounce Body Mist units to Defendant by December 18, 2006.[4] (Smaldino Dec. ¶ 11, PgID 183.) On December 19, 2006, Peter Gray emailed Bob Deitrick, Bob Smaldino, and others asking Defendant to confirm that "the bottles and pumps will arrive on time next week." (Def. Ex. D to Smaldino Dec., PgID 196.) Mr. Gray expressed concern because he

---

[4]In its complaint, Plaintiff asserts Defendant improperly cancelled the order after Plaintiff "had filled it." (Compl. ¶ 3.) Plaintiff has offered no evidence establishing that it ever delivered, or attempted to deliver, the product.

received an email from Tricor Braun stating that Tricor Braun "had been given a new shipping address by Bonne Bell." (*Id.*) Bob Smaldino responded to the email with the following statement:

> Pete,
> Your voicemail said you couldn't meet the price and delivery and I tried to call you back. As I have stated numerous times, we couldn't accept the cost increase for the next run. You told us that it was a take it or leave it situation.
> Please feel free to contact me with any questions.

(*Id.*) Mr. Smaldino understood from Mr. Gray's email that Plaintiff had not yet obtained the bottles from Tricor Braun and it would take at least another week before any delivery could be made by Plaintiff to Defendant. (Smaldino Dec. ¶ 13, PgID 184.) Peter Gray testified that Plaintiff anticipated receiving the bottles from Tricor Braun the week after December 19 and that it would take approximately one week to fill a 30,000 bottle order. (Gray Dep. at 24-25, PgID 204.)

**LEGAL FRAMEWORK**

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits, show there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008). The burden is on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by pointing out the absence of evidence to support the nonmoving party's case. *Bennett v City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The facts, and the inferences drawn from them, must be viewed in a light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (quoting *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Once the moving party has carried its burden, the nonmoving party must set forth specific facts showing there is a genuine issue

for trial. Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 574. The question is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-252.

**ANALYSIS**

The action comes to federal court on the basis of diversity of parties, after Defendant removed the action from state court. In diversity suits, federal courts apply the substantive law of the forum state. *CenTra, Inc. v. Estrin*, 538 F.3d 402, 409 (6th Cir. 2008) (citing *Himmel v. Ford Motor Co.*, 342 F.3d 593, 598 (6th Cir. 2003)). Plaintiff's claim is for breach of contract and, ordinarily, courts sitting in diversity will enforce the parties' contractual choice of governing law. *See Savedoff v. Access Group, Inc.*, 524 F.3d 754, 762 (6th Cir. 2008). Both parties have addressed the issue raised as one governed by Michigan law. Accordingly, Michigan law governs the resolution of the dispute.

The Michigan Commercial Code undoubtably applies to Plaintiff's breach of contract claim. The Michigan Commercial Code, M.C.L. § 440.2101, et seq., applies to "transactions in goods." M.C.L. § 440.2102. "A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." M.C.L. § 440.2204(1). To establish a breach of contract claim under Michigan law, a plaintiff must first show the existence of a valid contract. *In re Brown*, 342 F.3d 620, 628 (6th Cir. 2003). The elements of a valid contract are (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation. *Id.* (citing *Thomas v. Leja*, 468 N.W.2d 58, 60 (Mich. Ct. App. 1991)). "Once a valid contract has been established, a plaintiff seeking to recover on a breach of contract theory must then prove by a preponderance of

the evidence the terms of the contract, that the defendant breached the terms of the contract, and that the breach caused the plaintiff's injury." *Id.*

The undisputed facts show that the parties entered into a contract in which Plaintiff Surefil was to produce some quantity of Body Mist products for Defendant Bonne Bell. The parties' agreement was memorialized in PO 100604. Also undisputed is the requirement that Plaintiff would supply the products in bottles provided by Tricor Braun.[5] The contract required delivery of product by December 18, 2006. Without dispute, the products were not delivered by that date, and the products have never been delivered to Defendant.[6] "The rule in Michigan is that the one who first breaches a contract cannot maintain an action against the other contracting party for his subsequent breach or failure to perform." *Flamm v. Scherer*, 198 N.W.2d 702, 206 (Mich. Ct. App. 1972) (citing 5 CALLAGHAN'S MICHIGAN CIVIL JURISPRUDENCE, § 249, pp. 820-21).

On these facts, Defendant was entitled to cancel the contract and would be entitled to summary judgment. Under the Michigan Commercial Code, parties may agree upon a time for performance; the default time for performance, when not otherwise specified, is "a reasonable time." M.C.L. § 440.2309(1). *Cf.*, *MacRitchie v. Plumb*, 245 N.W.2d 582, 585 (Mich. Ct. App. 1976) ("The general rule is that time is not to be regarded as of the essence in the contract unless made so by express provision of the parties or by the nature of the contract itself or by circumstances under which it was executed."). "Tender of delivery is a condition to the buyer's duty to accept the goods

---

[5]In its brief, Plaintiff does not challenge this factual assertion by Defendant.

[6]In its brief, Plaintiff does not challenge this factual assertion of non-delivery by Defendant. Plaintiff offers explanations for its failure to deliver the products. Plaintiff also argues that the December 18 delivery date was extended to December 31. In its brief, Plaintiff does not assert it ever delivered or attempted to deliver the products to Defendant.

and, unless otherwise agreed to, his duty to pay for them." M.C.L. § 440.2507(1). Subject to exceptions and limitations that may not apply here, "if the goods or the tender of delivery fail in any respect to conform to the contract, the buyer may (a) reject the whole." M.C.L. § 440.2601(a); *see Midwest Mobile Diagnostic Imaging, LLC v. Dynamics Corp. of America*, 965 F.Supp. 1003, 1010-11 (W.D. Mich. 1997) (explaining, in dicta, that under 2-601 "the buyer may reject a seller's tender for any trivial defect, whether it be the quality of the goods, the timing of the performance, or the manner of delivery"). When a seller fails to make delivery and if the breach goes to the whole contract, the buyer may cancel the contract. M.C.L. § 440.2711(1). A "cancellation" occurs when "either party puts an end to the contract for breach by the other" party. M.C.L. § 440.2106(4). Here, the products were not delivered on the agreed upon date which, under the Michigan Commercial Code, entitled Defendant to cancel the contract.

Plaintiff has failed to establish a dispute on any fact material to its claim. Each of Plaintiff's attempts to create a genuine issue of material fact falls short. First, Plaintiff questions the scope of the contract between the two parties. Plaintiff asserts the "Quotation" document, dated November 30, 2006, supplemented PO 100604. Plaintiff must establish a valid contract existed in order to have any claim for breach of contract. Whether the November 30 document increased the quantity of products ordered is not material to the outcome of the dispute. The November 30 document, however, may create a material issue if it altered the delivery date. Unfortunately for Plaintiff, nothing in the November 30 document can be fairly interpreted to alter the previously agreed upon date of delivery. The December 31, 2006 date contained in the November 30 identifies the duration of the offer. It did not alter the date of delivery. Once accepted, the quantity of the products to be delivered increased, but the date of delivery remained the same. Assuming, for the sake of argument

8

only, that the November 30 document altered the date of delivery, Plaintiff still cannot prevail. Under section 2-309, where no delivery date is agreed upon, delivery must be made in a reasonable time. In its brief, Plaintiff *does not contest* Defendant's claim that the products that were the subject of the contract were *never* delivered.[7] Operating under this assumption, delivery was not made by December 31, 2006, or within a reasonable time. Because Plaintiff did not deliver any products, Plaintiff did not fulfill its obligation under the contract, regardless of the delivery date.

Second, Plaintiff asserts Defendant interfered with its ability to perform by diverting the required bottles from Tricor Braun to another company. After it filed this suit, Plaintiff discovered that, on December 15, 2006, Defendant placed an order for Body Mist with Process Technologies & Packaging. (Pl. Ex. 6 to Deitrick Dep., PgID 241.) The order was for 41,112 six ounce bottles of Body Mist at $1.68 per unit. (*Id.*) Plaintiff argues that the order was for a similar quantity of Body Mist products, but at a lower price per unit. Plaintiff concludes the evidence provides motive for Defendant to divert the bottles and undermine Plaintiff's ability to meet the delivery date. In the complaint, Plaintiff makes a claim for breach of contract, not interference with a business relationship. Assuming these allegations to be true, these facts do not create a genuine issue of fact on Plaintiff's breach of contract claim. Under the Michigan Commercial Code, impracticability or impossibility is only a defense to a breach of contract claim. *Cleveland-Cliffs Iron Co. v. Chicago & N. W. Transp. Co.*, 581 F.Supp. 1144, 1151 (W.D. Mich. 1984); *see* M.C.L. § 440.2615. The agreement between the two parties required Plaintiff to use Tricor Braun bottles, but did not require Defendant to provide the bottles to Plaintiff. Defendant expressed an intent to intervene with Tricor

---

[7]At best, Plaintiff claims it was "in a position to fill the order that Bonne Bell required." (Pl. Response at 5.)

Braun on Plaintiff's behalf to resolve the bottle issue. Nothing in the evidence presented, however, establishes that Defendant took an any responsibility or obligation to provide the bottles to Plaintiff. Nothing in the evidence presented establishes that the parties agreed to alter Plaintiff's obligation to timely deliver the product in bottles provided by Tricor Braun. Although Plaintiff has identified the diversion of the bottles as a question of fact, Plaintiff has not explained how this fact implicates or relates to any element of its breach of contract claim.

Third, Plaintiff asserts there is a factual dispute about whether Defendant ever cancelled the contract. Plaintiff claims the evidence contains contradictory statements concerning when and if Defendant ever cancelled PO 100604. Plaintiff acknowledges Mr. Smaldino's declaration states that he cancelled the purchase order. Plaintiff claims Mr. Smaldino's deposition testimony is at odds with his declaration. In addition, when asked whether the purchase order was ever cancelled, Mr. Deitrick testified he could not recall. (Deitrick Dep. at 34 and 35, PgID 251.) Mr. Deitrick testified that cancellations would be done in writing, rather than verbally. (*Id.* at 35, PgID 251.) When asked whether any documentation exists to show that Defendant cancelled the purchase order at issue, Mr. Deitrick again testified that he could not recall. (*Id.* at 35-36, PgID 251.) William Hunt, president of Surefil, avers that "Bonne Bell never told Surefil that the purchase order was being cancelled or terminated." ( William Hunt Affidavit ¶ 14, PgID 235.)

Taking the evidence of notice of cancellation in a light most favorable to Plaintiff, the fact that Defendant did not provide Plaintiff with notice that the contract was cancelled does not create a genuine issue of material fact on the breach of contract claim. Under section 2-711, when Plaintiff failed to make the delivery of the products, Defendant had the right to cancel the contract. The fact that Defendant failed to provide notice of its intent to cancel the contract does not establish that

10

Defendant breached any of the terms or conditions of the agreement. Neither does Defendant's failure to provide notice of its intent to cancel the contract justify Plaintiff's failure to deliver the products.

**CONCLUSION**

Defendant Bonne Bell is entitled to summary judgment on Plaintiff Surefil's breach of contract claim. Defendant has established that Plaintiff did not deliver or attempt delivery of the Body Mist products that were the subject of the contract. Although Plaintiff has asserted several factual disputes, Plaintiff has not established how those disputes are material to its breach of contract claim. Taking the disputed facts in the light most favorable to Plaintiff, Defendant is entitled to summary judgment.

**ORDER**

For the reasons provided in the accompanying opinion, Defendant Bonne Bell's motion for summary judgment (Dkt. No. 29) is **GRANTED.** Plaintiff Surefil's claim for breach of contract against Defendant is **DISMISSED WITH PREJUDICE. IT IS SO ORDERED.**

Date: August 4, 2010 /s/ Paul L. Maloney
Paul L. Maloney
Chief United States District Judge